UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ERIC M. BOHNE, individually and as Trustee of the ERIC M. BOHNE REVOCABLE FAMILY TRUST NO. 1, and on behalf of all person similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CLOSINGS OF TULSA, L.L.C., an Oklahoma Limited Liability Company, et al.,<br><br>Defendants. | Case No. 05-CV-0197-TCK-SAJ |

**OPINION AND ORDER**

Now before the Court are a motion for summary judgment (Dkt. # 109) filed by defendant Builders Title and Escrow, L.L.C. ("Builders Title") and 2003 Builders Services, L.L.C. ("Builders Services") and a motion for summary judgment (Dkt. # 118) filed by all defendants. This proposed class action is based on alleged misconduct by defendants in connection with certain real estate transactions involving plaintiffs. Defendants seek summary judgment, arguing that named plaintiff Kevinn [sic] M. Donovan released his claims against the defendants before he filed suit, that he failed to show that any fees paid by or to defendants in connection with his real estate transaction were in violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617, and that the statutory exemption under RESPA for affiliated business arrangements applies. Defendants Builders Title and Builders Services (collectively "Builders") additionally argue that Donovan did not use any of their settlement services to effect his real estate closing.

The Court held a hearing on April 10, 2006 and, among other things, dismissed Builders, Robert Dailey, Helen Elizabeth Dailey, John Woolman, Joseph McGraw, Peter McGraw, and Darrell

Jenkins as defendants. The remaining defendants are Closings of Tulsa, LLC, Closing and Escrow Company of Tulsa, Inc., McGraw Davisson Stewart, Inc., and Residential Sales Associates, LLC.

**I.**

As partially set forth in the Amended Complaint, this action arises in the wake of an investigation by the United States Department of Housing and Urban Development ("HUD") for possible violations of RESPA, which prohibits the payment or acceptance of kickbacks or fees for the referral of "a real estate settlement service involving a federally related mortgage loan" and fee-splitting except for settlement services actually performed. 12 U.S.C. §§ 2607(a), (b). HUD entered into settlement agreements with the defendants on March 18, 2005. Plaintiff Eric M. Bohne filed this suit as a class action on April 11, 2005. Plaintiff Kevinn M. Donovan and four other individuals joined Bohne in filing the Amended Class Action Complaint on May 6, 2005. Since then, all of the named plaintiffs except Donovan have been dismissed.

Donovan and his wife purchased their home in the Tulsa area with the assistance of a real estate associate of defendant McGraw Davisson Stewart, Inc. ("MDS"). Defendant Closings of Tulsa, L.L.C. ("COT") was the closing agent providing certain settlement services set forth on the form HUD-1, dated July 20, 2004. COT was formed in January 2000 by MDS and defendant Closing and Escrow Company of Tulsa, Inc. ("CETC") to provide settlement services to buyers and sellers of real estate in the Tulsa community. CETC is owned by defendants Robert and Helen Elizabeth Dailey. In March 2001, defendant Residential Sales Associates, L.L.C. ("RSA") was formed by a group of Tulsa real estate brokers and sales associates and acquired a twenty percent (20%) member's interest in COT.

Plaintiff asserts that, in October 2003, a group of approximately forty (40) Tulsa area home builders formed Builders Services solely for the purpose of forming Builders Title and distributing funds from Builders Title to its builder members. In November 2003, according to plaintiff's allegations, Builders Services and CETC formed Builders Title. He also alleges that CECT and COT contributed capital and assets from their ongoing title business in exchange for CECT receiving a 51% share of Builders Title and Builders Services contributed capital in exchange for 49% interest in Builders Title. Finally, plaintiff alleges that, in some cases, Builders Title outsourced core title work to COT. Amended Complaint, Dkt. # 9, at 5-6. Builders assert that Builders Title is a title company, owned 51% by CECT,[1] and 49% by Builders Services. See Motion for Summary Judgment, Dkt. # 109, at 3.

Subsequent to the closing, Donovan filed a grievance with the Greater Tulsa Area Realty Board against defendants MDS and Joseph McGraw for alleged actions arising from his real estate closing. Donovan asserts that the grievance involved the allegation that the 2004 ad valorem tax was improperly pro-rated. In connection that grievance, Donovan initiated an arbitration proceeding with the City of Tulsa. A representative of COT attended the arbitration. Thereafter, Donovan executed a Release in Full of All Claims and Assignments (the "Release"). Donovan specifically agreed

> (b) unconditionally, to release, remise, discharge and acquit COT, its subsidiaries, affiliates, officers, directors, employees, agents, trustees, administrators, predecessors, successors and assigns, and the heirs, successors and assigns of any or all of them, both individually and in their corporate capacity, from each and every

---

[1] Although Builders referenced "Closings Title & Escrow Co., L.L.C." instead of defendant "Closing and Escrow Company of Tulsa, Inc.", the Court assumes that Builders are referencing the same entity, as Builders cite to the Complaint ¶ 19 for their assertion. See Motion for Summary Judgment, Dkt. # 109, at 3.

3

> claim, action, liability, item of damage, expense, fee, or remedy of any kind or nature whatsoever, . . . which Donovan had, now has or may ever have, or which their legal representatives, heirs, executors, administrators, successors or assign had, have or may ever have, which is related in any way to or arises out of the above described Sale of Real Estate/ whether or not said claims or causes of action were, could have been should have been or were required to be raised in the demands made by any of the parties hereto;
> (c) forever to covenant not to sue or in any way assert or attempt to assert any claim or cause of action against COT, its subsidiaries, affiliates, officers, directors, employees, agents, trustees, administrators, predecessors, successors and assigns, and the heirs, successors and assigns of any or all of them, both individually and in their corporate capacity, arising from the above described Sale of Real Estate with regard to any provision of any federal or state statute or regulation or of common law, be it federal or state; . . . ."

Def. Mot. for Summ. Judg., Dkt. # 118, Ex. A-3, at 2.  He also agreed

> to hereby release and forever discharge and acquit COT, its respective agents, servants, employees, attorneys, consultants, parent companies, affiliated companies, subsidiaries, contract affiliates, assigns and any predecessors and successors in interest, of and from any and all claims, demands, damages, actions, causes of action, counts or suits of any kind or nature whatsoever, including but not limited to, claims arising out of or related in any way to the above described Sale of Real Estate; and any and all claims which could have been brought, or related to those claims, matters and facts set forth or described above, or which through the liberal rules of pleading could have been alleged.

Id. at 4.  Finally, the Release specifically provides:

> 6.  This Agreement covers and releases any and all claims whatsoever described above regardless of whether those claims are known or unknown, whether they are suspected or unsuspected, or whether they have accrued or will accrue in the future.

Id. at 4-5.  The Release was executed under separate consideration and not in connection with the closing of Donovan's real estate transaction.

Plaintiff disputes whether any defendant other than COT received any compensation, payment or thing of value in connection with the settlement service charges for the title insurance binder fee, the abstract or title search fee, or the title insurance fee identified in Donovan's HUD-1 Settlement State for his real estate closing.  In addition, plaintiff disputes defendants' assertion that,

4

[s]ince its inception, the only payments made by COT to its members, CETC, MDS, and RSA have been in the form of net profits, which are based solely on the respective percentage of each member's ownership interest and constitute a return on investment, as determined by COT's accountants, in accordance with generally accepted accounting principals [sic]." Motion for Summary Judgment, Dkt. # 118, at 7. Plaintiff additionally asserts that he should be permitted to conduct discovery as to defendants' assertions as to these two disputed facts, since discovery has been limited thus far to class certification issues. In response to defendants' specific arguments, plaintiff claims that his RESPA claims were not covered by the Release, that there is a sufficient causal connection to support a RESPA claim, and that he is entitled to rely upon the settlement agreement between defendants and HUD.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

The Court finds that Donovan released all of his claims against defendants in connection with the real estate transaction upon which his claims are based. The Release specifically references and relates to the sale of real property situated in "Tulsa County, State of Oklahoma," and was executed by the parties in the "State of Oklahoma." Def. Mot. for Summ. Judg., Dkt. # 118, Ex. A-3 at 1, 6. Oklahoma law governs its enforceability. See Okla. Stat. tit. 15, § 162. "A release is a contract and when its language is clear and without ambiguity, the trial court is to interpret it as a matter of law." Thomas v. Peters, 885 P.2d 686, 688 (Okla. Ct. App. 1994) (citation omitted). "Such contracts are valid and enforceable when: (1) an attempt to excuse one party from liability is expressed in clear, definite and unambiguous language, (2) the contract is made at arm's length

6

with no vast disparity of bargaining power between the parties, and (3) when it is not contrary to public policy." Id. (citation omitted).

Donovan does not dispute that all defendants fall within the coverage of the Release nor does he contend that any bargaining power or public policy issues exist. Instead, he contends that the Release is not valid because he did not become aware of the facts that give rise to his claims against the defendants until after he signed the Release. Defendants dispute whether this assertion is true, since he received his HUD-1 Settlement Statement over six month prior to executing the Release and testified that, at the time he closed his real estate transaction, he believed the fee he was charged for his title insurance binder was particularly high. Rep. Br., Dkt. # 141, Ex. A, Donovan Depo. Tr., at 90:22-91:7. He also testified that he is not aware of any facts which defendants failed to disclose that prevented him from filing a lawsuit. Id. at 137:13-15.

In any event, the Release specifically refers to "any federal or state statute or regulation" and releases "any and all claims whatsoever described above regardless of whether those claims are known or unknown, whether they are suspected or unsuspected, or whether they have accrued or will accrue in the future." Def. Mot. Summ. Judg., Dkt. # 118, Ex. A-3, at 2, 4-5. Donovan cites to a case from the United States Court of Appeals for the Sixth Circuit for the proposition that general release language will not serve to release unknown claims subsequently made under federal statutes even though the release purports to include unknown claims. Forry, Inc. v. Neundorfer, Inc., 837 F.2d 259, 263 (6th Cir. 1988). The Forry case stands in opposition to numerous other cases in which courts have enforced release language purporting to bar unknown claims. E.g. Simpson v. Lykes

7

Bros. Ind., 22 F.3d 601, 602 (5th Cir. 1994); Wagner v. NutraSweet Co., 95 F.3d 527, 533 (7th Cir. 1996); Three Rivers Motors Co. v. Ford Motor Co., 522 F.2d 885, 895-96 (3rd Cir. 1975).[2]

More important, the Oklahoma Supreme Court has held that broad language in a release covered "all demands or rights to demand, or possible causes of action and constituted a complete discharge of liability, whether or not the various demands or claims were discussed or mentioned when the mutual release was signed, and whether or not the possible future claims were known." Kay Pharmacal Co. v. Dalious Constr. Co., 276 P.2d 756, 758 (Okla. 1954) (citation omitted).[3] The Kay Pharmacal court explained: "The reason for the rule is that one seeking a settlement and release has the right to buy peace from all future contention on the existing claims of every character." Id.

---

[2] The Court is aware that a Tenth Circuit panel, interpreting Pennsylvania law, held that a release does not cover a claim unknown at the time of execution. William A. Smith Contracting Co., Inc., 467 F.2d 662, 665 (10th Cir. 1972). However, the release at issue in that case did not include any "known or unknown claim" language, and district courts in Pennsylvania have relied on the subsequent Three Rivers case to hold that, "where the parties manifest an intent to settle all accounts, the release will be given full effect even as to unknown claims." E.g., Transportation Ins. Co. v. Spring-Del Assocs., 159 F. Supp. 2d 836, 8 42- 43 (E.D. Pa. 2001); Applebaum v. State Farm Mut. Auto. Ins. Co., 626 F. Supp. 1299, 1306 (M.D. Pa. 1986); Siciliano v. Siciliano, 405 F.Supp. 814, 817-18 (W.D. Pa. 1975).

[3] The Court is aware of Wright v. Southwestern Bell Telephone Co., 925 F.2d 1288 (10th Cir. 1991), involving an appeal from the Western District of Oklahoma. In that matter, the Tenth Circuit held, based upon its examination of general release language, that an employee had knowingly and voluntarily released his discrimination claims, but not his ERISA claim. In so holding, the Tenth Circuit left open the possibility that release language purporting to cover unknown future claims might raise a material question of fact about whether a plaintiff knowingly and voluntarily released a racial discrimination claim. Id. at 1292. However, the case arose in the context of a Title VII claim, which may be waived by agreement if the waiver must be knowing and voluntary, and the panel's focus was on the knowing a voluntary aspect of the plaintiff's waiver. Id. at 1292-93 (citations omitted). The release in that case did not contain any "known or unknown claim" language, id. at 1290, and the panel found that the language of the release was insufficient to release future claims against the defendant about which neither party knew. Id. at 1293.

This Court finds that the Release is signed by Donovan is valid and covers all of his claims against the defendants in this action. There is no genuine issue of material fact and the moving parties are entitled to judgment as a matter of law.

**IV.**

Because the Court finds that the Release signed by Donovan is valid and enforceable under Oklahoma law, it is unnecessary to address the remaining claims. In addition, proper evaluation of the remaining claims would not be possible because they would require analysis of the merits, and thus far discovery in this matter has been limited to class certification issues. Thus, the separate motion for summary judgment filed by Builders Title and Builders Services, which is not based on the Release, must be denied as moot and would be, in any event, since these defendants were dismissed at the April 10, 2006 hearing.

IT IS THEREFORE ORDERED that and the motion for summary judgment (Dkt. # 118) filed by all defendants is hereby granted; the motion for summary judgment (Dkt. # 109) filed by defendant Builders is hereby denied as moot.

Dated this 10th day of April, 2006.

_____
TERENCE KERN
UNITED STATES DISTRICT JUDGE